IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GUITAR CENTER STORES, INC., )
a Delaware corporation, )
 )
 )
            Plaintiff, )
 )
       v. )  No. 07 C 4227
 )
7250 SOUTH CICERO EQUITIES, LLC, )
as Illinois limited liability )
company, )
 )
 )
            Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Guitar Center Stores, Inc. contracted with defendant 7250 South Cicero Equities, LLC to lease premises in a shopping center to be used for a Guitar Center retail store. Under the terms of the lease, defendant was to make certain improvements to the premises prior to providing access and then possession. Plaintiff alleges, and defendant admits in its answer, that access and possession was not provided by the dates set forth in the lease. In its breach of contract count, plaintiff seeks damages in the form of an abatement of

rent provided for in the lease as well as consequential damages caused by the delay. Count II is a negligent misrepresentation claim based on inaccurate information that was provided regarding the status of construction and when the work would be completed. Defendant has moved to dismiss Count II for failure to state a viable claim and to strike from Count I any prayer for damages other than any rent abatement relief that is provided for in the lease. The parties agree that Illinois law applies to both claims. There is complete diversity of citizenship and the amount in controversy exceeds $75,000.

The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Estate of Sims v. County of Bureau, ___ F.3d ___, 2007 WL 3036752 *3 (7th Cir. Oct. 19, 2007). Plaintiff need only plead facts sufficient to raise a right to relief above the speculative level, providing fair notice and an appearance of plausibility. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965, 1973-74 & n.14 (2007); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); Sims, 2007 WL 3036752 at *3; St. John's United Church of Christ v. City of Chicago, ___ F.3d ___, 2007 WL 2669403 *7 (7th Cir. Sept. 13, 2007); Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007); Pisciotta v. Old National Bancorp, 499 F.3d 629, 633 (7th Cir. 2007). A complaint should

be dismissed if "the factual detail . . . [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." St. John's, 2007 WL 2669403 at *7 (quoting Airborne, 499 F.3d at 667).

The well-pleaded allegations of the complaint must be taken as true and all reasonable inferences drawn in plaintiff's favor. Twombly, 127 S. Ct. at 1965; Erickson, 127 S. Ct. at 2200; Sims, 2007 WL 3036752 at *1; Pisciotta, 499 F.3d at 633; Caldwell v. Jones, ___ F. Supp. 2d ___, 2007 WL 2745702 *2 (N.D. Ind. Sept.19, 2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 127 S. Ct. at 1969; Caldwell, 2007 WL 2745702 at *2. As long as they are consistent with the allegations of its complaint, plaintiff may assert additional facts in its response to the motion to dismiss. Brokaw v. Mercer County, 235 F.3d 1000, 1006 (7th Cir. 2000); Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Gershengorin v. Vienna Beef, Ltd., 2007 WL 2840476 *3 (N.D. Ill. Sept. 28, 2007).

Additionally, under federal pleading rules, plaintiff is not limited to nor bound by the legal characterizations of its claims contained in the complaint. A claim can survive as long as the facts alleged would support relief. Forseth, 199 F.3d at 368; Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041

(7th Cir. 1999); LaRoe v. Cassens & Sons, Inc., 472 F. Supp. 2d 1041, 1047 (S.D. Ill. 2006). The legal basis for a claim, though, must be identified in response to a motion to dismiss and adequate argument made in support of an adequate claim being stated. Kirksey, 168 F.3d at 1041-42; Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 224 F. Supp. 2d 1172, 1175 (N.D. Ill. 2002).

Count II will be considered first. The parties agree that Illinois law recognizes claims for negligent misrepresentation. See First Midwest Bank, N.A. v. Stewart Title Guaranty Co., 218 Ill. 2d 326, 843 N.E.2d 327, 333-34 (2006). An essential element of a negligent misrepresentation claim is that the defendant has a duty to the plaintiff to communicate accurate information. Brogan v. Mitchell International, Inc., 181 Ill. 2d 178, 692 N.E.2d 276, 278 (1998). Under Illinois law, that duty exists in only two circumstances: (1) if injury to a person or property resulted or (2) if the defendant is in the business of supplying information to guide others in business transactions. Id.; Sinio v. McDonald's Corp., 2007 WL 869553 *14 (N.D. Ill. March 19, 2007). Plaintiff relies on the latter circumstance, contending defendant was in the business of supplying information.

In the Complaint, plaintiff alleges that defendant was the landlord under the lease and the owner of the shopping center at which the leased premises were located. These allegations are consistent with the terms of the lease.[1] It is also alleged in the Complaint that defendant was responsible for making improvements to the premises and that it used a sub-contractor for at least some of this work. Additionally, it is conclusorily alleged that "[d]efendant was in the business of communicating information to its lessees, such as Guitar Center, as to the status and condition of the shopping center and the status and schedule of construction and necessary work to be done on the Premises and shopping center." Compl. ¶ 49. In response to the motion to dismiss, plaintiff contends that defendant was "managing the construction [at the shopping center] and brokering the real estate dealings." Pl. Answer Br. at 10. Plaintiff further contends that "[d]efendant was functioning much like a real estate broker." Id. The allegation that defendant was brokering real estate deals for the shopping center is inconsistent with allegations of the Complaint, which

---

[1] Although not attached to the Complaint, plaintiff expressly states that the terms of the lease are incorporated in the Complaint. Compl. ¶ 5. In any event, since central to plaintiff's claims, the lease may be considered even if not attached to the Complaint. Continental Casualty Co. v. American National Insurance Co., 417 F.3d 727, 731 n.3 (7th Cir. 2005). Defendant has attached a copy of the lease to its motion to dismiss and plaintiff does not dispute the accuracy of that copy.

incorporates the lease itself. Paragraph 1.10 of the lease expressly states that both plaintiff and defendant were represented by brokers in negotiating the lease. Thus, the present allegation (in the answer brief) that defendant acted as a broker toward plaintiff is inconsistent with the Complaint as well as the nature and terms of the lease and therefore is not properly considered.

Even viewing defendant as the general contractor for the improvements being made to the premises, Illinois law is clear that a contractor is not considered to be in the business of supplying information when informing a purchaser about the status or progress of construction. "[A] party that provides information, not as a separate industry, but in association with the sale of a product cannot be sued for subsequent economic damages on the basis of negligent misrepresentation." Iles v. Swank, 2005 WL 1300773 *6 (N.D. Ill. March 18, 2005). Contractors/builders, architects, and manufacturers are not considered suppliers of information who may be found liable for negligent misrepresentations when providing information about the products they are producing. See Equity Builders & Contractors, Inc. v. Russell, 406 F. Supp. 2d 882, 891 (N.D. Ill. 2005) (builder and architect); Brethren Home of Girard, Illinois v. OSM, Inc., 2006 WL 3333594 *2 (C.D. Ill. Nov. 16, 2006) (architect); Moorman Manufacturing Co. v. National Tank Co.,

91 Ill. 2d 69, 435 N.E.2d 443, 452-53 (1982) (manufacturer). Plaintiff does not allege any plausible basis for holding defendant is a supplier of information that can be held liable for negligent misrepresentations. Count II will be dismissed.

The other issue raised by defendant is whether plaintiff's prayer for consequential damages is barred by liability provisions contained in the parties' lease. Plaintiff contends this issue should not be addressed on a motion to strike since it involves interpretation of the contract. Plaintiff, however, does not allege in the Complaint nor contend in response to the motion to strike that there are any extrinsic matters that must be considered in order to properly construe the parties' contract. Even if the language of a contract is lacking in clarity, it may be construed on a motion to dismiss as long as the plaintiff does not point to extrinsic materials that would affect the construction of the contract. See Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856, 862-63 (7th Cir. 2002). At a minimum, there must at least be some ambiguity in the language of the contract before determining that its meaning cannot be resolved on a motion to dismiss. See Continental Casualty Co. v. Northwestern National Insurance Co., 2003 WL 21801022 *2 (N.D. Ill. Aug. 4, 2003); Great Oak, L.L.C. v. Begley Co., 2003 WL 880994 *3 (N.D. Ill. March 5, 2003). Since plaintiff does not contend there is any pertinent extrinsic

evidence, the language of the contract will be examined to determine if it supports defendant's contention that consequential damages have been excluded.

The pertinent provisions of the lease,[2] as amended,[3] are:

> **3. Term.**
>     3.1 <u>Term.</u> The Commencement Date, Expiration Date and Original Term of this Lease are as specified in Paragraph 1.3.
>     3.2 <u>Delay In Possession.</u> Landlord agrees to use commercially reasonable efforts to deliver to Tenant "Premises Access" (as defined below) of the Premises by June 1, 2006 ("Delivery Date"). Landlord shall deliver possession of Premises to Tenant with Landlord's Work substantially complete by July 1, 2006 ("Turnover Date"). Delivery of Premises Access to Tenant as provided herein by the Delivery Date and delivery of the Premises to Tenant with Landlord's Work substantially complete as provided herein by the Turnover Date shall be referred to collectively as the "Scheduled Deliveries." Landlord shall not be subject to any liability therefor, nor shall such failure affect the validity of

---

[2]Page 1 of the lease, which is a title or cover page, and page 2 of the lease, on which the provisions begin, both have a Guitar Center logo on them. Also, on the top of page 2 is "Guitar Center Stores, Inc. Commercial Multi-Tenant Lease-Net." The lease appears to be a Guitar Center form lease for retail stores that was modified by the parties or, at least, contract language that was modeled after a previously existing lease for another Guitar Center store. There is, however, no allegation in the Complaint and no party presently contends that either party was responsible for drafting any of the pertinent language such that any ambiguities should be construed against the drafting party.

[3]The original lease was executed in October 2005. On February 16, 2006, the 60-day provisions in ¶ 3.2 were inserted in place of identical 30-day provisions.

this Lease, or the obligation of Tenant hereunder, or extend the term hereof, but in such case, Tenant shall not be obligated to pay rent or perform any other obligation of Tenant under the terms of this Lease until Landlord delivers possession of the Premises to Tenant with Landlord's Work substantially complete. "Premises Access" is defined as Landlord's permitting Tenant's unfettered access to the Premises with sufficient electrical power available to the Premises to construct Tenant's improvements and substantial completion of all interior walls of the Premises as specified in Landlord's Work. If possession of the Premises is not delivered to Tenant within sixty (60) days after the Turnover Date, Tenant may, at its option, by notice in writing to Landlord within sixty (60) days thereafter, cancel this Lease, in which event the Parties shall be discharged from, all obligations hereunder. Except as may be otherwise provided, and regardless of when the term actually commences, if any Scheduled Delivery is not made as agreed, and Tenant does not terminate this Lease, as aforesaid, the period free of the obligation to pay Base Rent and any Operating Expenses, if any, that Tenant would otherwise have enjoyed shall run from the date of delivery of possession and continue for a period equal to what Tenant would otherwise have enjoyed under the term hereof. In addition, Tenant shall receive one (1) additional day of abatement of Base Rent and Operating Expenses for each day that any Scheduled Delivery is late.

\* \* \*

**8. Insurance; Indemnity.**

\* \* \*

8.8 <u>Exemption of Landlord from Liability.</u> Except for Landlord's intentional acts, negligence, or breach of any representations or warranties hereunder, Landlord shall not be liable for injury or damage to the persons or goods, wares, merchandise, or other property of Tenant,

> Tenant's employees, contractors, invitees, customers, or any other person in or about the Premises, whether such damage or injury is caused by or results from fire, steam, electricity, gas, water or rain, or from the breakage, leakage, obstruction or other defects of pipes, fire sprinklers, wires, appliances, plumbing, air conditioning or lighting fixtures, or from any other cause, whether the said injury or damage results from conditions arising upon the Premises or upon other portions of the building of which the Premises are a part, or from other sources or places, and regardless of whether the cause of such damage or injury or the means of repairing the same is accessible or not. Except for Landlord's intentional acts, negligence or breach of any representations or warranties hereunder, Landlord shall not be liable for any damages arising from any act or neglect of any other tenant of Landlord or be liable for injury to Tenant's business or for any loss of income or profit therefrom.
>
> * * *
>
> **27. Cumulative Remedies.** No remedy or election hereunder shall be deemed exclusive but shall, wherever possible, be cumulative with all other remedies at law or in equity.

Under Illinois law, contract provisions limiting remedies are enforceable, but are to be strictly construed. Hicks v. Airborne Express, Inc., 367 Ill. App. 3d 1005, 858 N.E.2d 48, 54 (5th Dist. 2006). While the magic word "exclusive" need not be used, id., the contract as a whole must clearly indicate that a remedy is exclusive. Lake County Trust Co. v. Two Bar B, Inc., 182 Ill. App. 3d 186, 537 N.E.2d 1015, 1019 (1st Dist. 1989); Structural Sales, Inc. v. Vavrus, 132 Ill. App. 3d 718, 477

N.E.2d 745, 747 (3d Dist. 1985); Doing Steel, Inc. v. Castle Construction Corp., 2004 WL 432463 *4 (N.D. Ill. Feb. 18, 2004) (quoting Board of Regents v. Wilson, 27 Ill. App. 3d 26, 326 N.E.2d 216, 220 (2d Dist. 1975)).

Defendant contends that any right plaintiff may otherwise have to consequential damages for late delivery of the premises is precluded by the fourth sentence of ¶ 3.2, particularly the first phrase of that sentence. That sentence reads: "Landlord shall not be subject to any liability therefor, nor shall such failure affect the validity of this Lease, or the obligation of Tenant hereunder, or extend the term hereof, but in such case, Tenant shall not be obligated to pay rent or perform any other obligation of Tenant under the terms of this Lease until Landlord delivers possession of the Premises to Tenant with Landlord's Work substantially complete." Plaintiff contends this provision does not clearly set forth an exclusive remedy because (a) the referent for "therefor" is unclear; (b) contrary to reading it as providing for no remedy, ¶ 3.2 itself provides for remedies; (c) the word "exclusive" is not in the paragraph nor any other word or words with a similar meaning; and (d) other provisions of the lease support that rent abatement is not the exclusive remedy.

While sentence four and the paragraph as a whole could have been more artfully drafted, it is sufficiently clear that rent abatement is the exclusive remedy for delay. Paragraph 3.2 is entitled: "Delay in Possession," thus indicating that the main topic of the paragraph is delay in providing possession.[4] The only subjects that "therefor" can reasonably be construed as referring to are the two deadlines designated as "Scheduled Deliveries" in the immediately preceding sentence. Since the paragraph's title refers to delay and any liability related to deadlines could only be for failing to meet the stated deadlines, the only reasonable construction of the first phrase of sentence four is as a reference to liability for delays in meeting either or both of the dates for a Scheduled Delivery. Sentence four clearly states that there can be no liability for failing to meet the dates for Scheduled Deliveries set forth in the preceding sentences of ¶ 3.2.

Plaintiff contends that reading "therefor" as a reference to failing to meet the stated deadlines is inconsistent with other provisions of ¶ 3.2. Plaintiff also contends that reading the use of "such failure" in the second phrase of sentence four

---

[4]There is no general provision in the contract that headings and titles of sections are for convenience only and not to be considered terms of the contract.

as also referring to failure to meet Scheduled Delivery deadlines (and thus making failure to meet those deadlines as having no effect on the validity of the lease or obligations thereunder) would be inconsistent with other provisions of ¶ 3.2. The final phrase of ¶ 3.2, however, is preceded by a "but." The use of "but" is another way of saying there is an exception to there being no effect on any obligation under the lease. In other words, sentence four provides that failing to meet one of the deadlines has no effect on tenant's obligation, but (except) that the obligation to begin paying rent is delayed. As to there being no effect on the validity of the lease, the paragraph as a whole should be read as providing that a failure to meet the deadline does not itself automatically invalidate (terminate) the lease. Instead, as provided in sentence six, the validity of the lease can only be affected by tenant (plaintiff) providing notice of termination (within the time period stated) based on defendant not delivering possession within 60 days after the stated date for substantial completion of the work ("Turnover Date"). Plaintiff also contends that the rent abatement provision contained in the last sentence of ¶ 3.2 is inconsistent with sentence four stating there can be no liability. First, the rent abatement is not necessarily a liability. It does not provide that defendant would owe any payment (liability) to plaintiff; it

only provides that plaintiff could take a credit against the rent as it otherwise comes due. Even if the abatement could be considered a liability of defendant, it is not inconsistent with the first phrase of sentence four providing that there is no liability for delay. The last two sentences of ¶ 3.2 should be read together since the last sentence begins "In addition." Like the "but" phrase in sentence four, the last two sentences state an exception to the general disclaimer of liability. A provision is not internally inconsistent because it states a general rule as an absolute and thereafter lists exceptions. Paragraph 3.2 is not rendered internally inconsistent by reading sentence four as generally disclaiming liability for delays in meeting the Scheduled Delivery deadlines.

Plaintiff contends ¶ 3.2 cannot be read as providing an exclusive remedy for delays because it does not use the word "exclusive" or some other word with a similar meaning. It is true, as defendant contends, that the magic word "exclusive" need not be used in an exclusive remedy provision. See Hicks, 858 N.E.2d at 54. Still, as plaintiff contends, if "exclusive" does not appear in the contract, another word or words must be used that clearly indicate a remedy is exclusive. The problem with plaintiff's argument is that other such words are used in the contract. The contract generally states there shall be "no

liability" for delay and then lists exceptions. That is a clear manner of stating that the listed exceptions are the exclusive remedies for defendant's delay in meeting the Scheduled Delivery deadlines.

Plaintiff also contends that reading ¶ 3.2 as providing the exclusive remedies for delays in meeting the Scheduled Deliveries is inconsistent with provisions of the lease contained in ¶ 8.8 and ¶ 27. Paragraph 8.8 lists other types of damages for which defendant cannot be liable. It does not exclude all liability for consequential damages to plaintiff's business. See ¶ 8.8 last sentence ("Except for Landlord's intentional acts, negligence or breach of any representations or warranties hereunder, Landlord shall not be liable for . . . injury to Tenant's business or for any loss of income or profit therefrom."). Paragraph 8.8, however, does not provide that plaintiff is entitled to any particular type of damages for any particular action or breach of defendant; it only lists certain situations for which liability on defendant's part is excluded. There still must be some other basis--e.g. general contract law or a specific contract provision--for holding defendant to be liable for a particular breach or other conduct. It is consistent with ¶ 8.8 for another provision of the lease to exclude liability entirely or limit damages liability or remedies

for particular breaches to particular damages or remedies. The previously discussed reading of ¶ 3.2 is consistent with ¶ 8.8.

Paragraph 27 provides that, "wherever possible," no remedy contained in the lease is to be deemed exclusive. Defendant invokes the general rule of contract construction that, where provisions conflict, specific provisions control over general provisions. See Preuter v. State Officers Electoral Board, 334 Ill. App. 3d 979, 779 N.E.2d 322, 332 (1st Dist. 2002); Parker v. City of Elgin, 2005 WL 2171159 *10 (N.D. Ill. Aug. 30, 2005). Defendant contends the specific provision of ¶ 3.2 should control over any general provision of ¶ 27 that might otherwise conflict. There, however, is no conflict between the two provisions. The "wherever possible" qualification contained in ¶ 27 allows for the possibility that some provisions of the contract contain exclusive remedies. Paragraph 3.2 providing that there is no liability for delay except for the limited exception stated in ¶ 3.2 does not leave open the possibility that ¶ 3.2 contains non-exclusive remedies for delay. Paragraph 27 is not inconsistent with reading ¶ 3.2 as containing exclusive remedies for delays in meeting the Scheduled Delivery deadlines.

Even with ¶ 3.2 being construed as providing the exclusive remedies for the alleged delivery delays, plaintiff

contends it can still obtain consequential damages because its claims of breach are not limited to claims for breaching the Scheduled Deliveries provisions. The other provisions that plaintiff cites generally are ones that cannot be breached until after turnover is complete. The facts alleged are not consistent with the alleged injuries being caused by anything other than delays in delivering access or delays in completing the work required for turnover of the premises. In neither the Complaint nor plaintiff's answer brief does plaintiff allege a sufficient basis for defendant being liable for anything other than such delays.

Although defendant requests that allegations of the Complaint be stricken, there is no need to actually strike any allegations. It is sufficient to rule that plaintiff's damages for any proven breach of the "Scheduled Deliveries" are limited to the rent abatement provided for in ¶ 3.2 of the parties' lease.

Today's ruling places limits on the damages plaintiff may obtain. This may help the parties in resolving their differences. Within two weeks after the date of today's order, plaintiff shall serve a written settlement demand on defendant. At the next status hearing, the parties shall report on the

possibility of settlement. In the meantime, discovery is not stayed.

IT IS THEREFORE ORDERED that defendant's motion to dismiss Count II and strike damages [11] is granted in part and denied in part. Count II of the Complaint is dismissed. Damages for breaching the "Scheduled Deliveries" provisions are limited to rent abatement as provided in ¶ 3.2 of the parties' lease. All discovery shall be completed by January 25, 2008. A status hearing will be held on December 12, 2007 at 11:00 a.m.

ENTER:

*[signature]*
UNITED STATES DISTRICT JUDGE

DATED: NOVEMBER 8, 2007